EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ELVIN SANTIAGO RAMÍREZ, acusado y apelante.

Número 15913.

*Sometido:* 1 de marzo de 1955. *Resuelto:* 15 de marzo de 1955.

70

*William Morales Torres*, abogado del apelante; *Hon. Secretario de Justicia Interino J. B. Fernández Badillo y Ramón Olivo Nieves, Fiscal Especial, Tribunal Supremo*, abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del Tribunal.

██ Elvin Santiago Ramírez fué acusado del delito de hurto mayor. El tribunal de derecho que juzgó el caso le declaró culpable y le sentenció a sufrir de un año a un año seis meses de presidio. Apeló para ante nos y el primer error que señala es que "cometió error el tribunal apelado al no advertirle al acusado que tenía el derecho constitucional a ser juzgado por jurado." Conforme surge de los autos, al ser llamado el caso ocurrió lo siguiente:

"Fiscal: Estamos listos.

"Lic. Nieves López: Vamos a renunciar al juicio por jurado. Renunciamos al jurado y lo veremos por tribunal de derecho.

"Juez: ¿Usted oyó que su abogado dijo que renuncia al jurado?

"Acusado: Sí, señor.

"¿Oyó que su abogado dijo que ha renunciado a su derecho a ver el caso por jurado, y que se vea por tribunal de derecho?

"Sí, señor, está bien.

"¿Solicita que el caso lo vea el Juez, en vez del jurado?

"Acusado: Como lo diga el abogado, que se vea por jurado.

"Juez: Entonces, vamos a elegir un jurado.

"Secretario: Ermelindo Rivera Figueroa, Jayuya; Julio Alvarado, Orocovis; Alfredo Miranda, Coamo; Rafael Rivera, Yauco; Carmelina Torres de Royo, Ponce; Nicomedes Santiago, Juana Díaz. . . .

"Lic. Nieves López: Antes de seguir llamando a los miembros del jurado, el acusado ha cambiado de parecer, y quiere que el caso se vea por tribunal de derecho, en vez de tribunal de hecho.

"Juez: "¿Oyó lo que dijo su abogado?

"Acusado: Sí, señor.

"¿Está conforme con lo que él acaba de decir?

"Sí, señor.

"¿O sea, que el Juez, y no el jurado, sea el que actúe?

"Sí, señor.

"Los miembros del jurado que se han llamado, se han enterado de lo que dice el acusado, que ha cambiado de opinión, y quiere que el caso lo vea yo. Léase la acusación.

"(Se lee la acusación por el Secretario.)

"Lic. Nieves López: No culpable, señor Juez."

El proceder anterior equivalió a una renuncia del derecho que tenía el acusado a ser juzgado por el jurado. El tribunal no tenía obligación alguna de advertirle de tal derecho. Se presume que el acusado lo conocía. Según dijimos en *Pueblo* v. *Figueroa*, 77 D.P.R. 188:

"El párrafo 2 de la Sección 11 del Artículo II convirtió el anterior derecho estatutario a juicio ante jurado en casos de delitos graves en un derecho constitucional. *Informe de la Comisión de Carta de Derechos,* XXI Revista Jurídica de la Universidad de Puerto Rico, 1, 15, 16; *Notes and Comments on the Constitution of the Commonwealth of Puerto Rico,* 42. Pero el debate en la Convención Constituyente claramente estableció que el párrafo 2 no tuvo por miras que el juicio ante jurado en casos de delitos graves fuera mandatorio en Puerto Rico. *El derecho a juicio ante jurado en tales casos*—si bien ahora un derecho constitucional más bien que estatutario—*permanece siendo, como en el pasado, un privilegio del acusado el cual éste puede renunciar.* Diario de Sesiones, Convención Constituyente de Puerto Rico, 605; *Ramos* v. *Rivera,* 68 D.P.R. 548, 560. . . ." (Bastardillas nuestras.)

Véanse además, *Pueblo* v. *Tosado*, 77 D.P.R. 434 y *Pueblo* v. *Vargas*, 74 D.P.R. 144, 150. Así pues, el primer error señalado no fué cometido.

 Sostiene además el apelante que "cometió error el tribunal apelado al no exigirle al fiscal que presentara la teoría de su caso." De acuerdo con el inciso 3 del art. 233 del Código de Enjuiciamiento Criminal:

"El fiscal, o cualquier otro representante del Pueblo de Puerto Rico, iniciará(¹) el juicio expresando oralmente ante el jurado o la corte, según el caso, la naturaleza del delito que intenta probar,

---

(¹) El texto inglés del inciso 3 del art. 233 del Código de Enjuiciamiento Criminal dice en parte que: "The prosecuting attorney or other counsel of the People of Puerto Rico *must open the case by stating orally to the jury or to the court,*" etc. (Bastardillas nuestras.)

El art. 1093 del Código Penal de California guarda cierta similitud con el 233 de nuestro Código de Enjuiciamiento Criminal. Sin embargo, en su inciso 2, que es el que parece corresponder al inciso 3 del art. 233 del nuestro, sólo dispone que:

"El fiscal, o cualquier otro representante del pueblo, *iniciará el juicio* y ofrecerá evidencia en apoyo del delito imputado." (Bastardillas nuestras.)

las circunstancias en que se cometió el hecho, los medios de prueba de que pretende valerse para justificar la acusación o denuncia y ofrecerá y practicará las pruebas que tenga en apoyo de dicha denuncia o acusación."

De los autos surge también que al ser llamada la primera testigo, que era la perjudicada, ocurrió lo siguiente:

"Fiscal: ¿Su nombre?
"Testigo: Leida Morales Rodríguez.
". . . . . . .
"Juez: ¿El Fiscal, quiere presentar la teoría?
"Fiscal: No vamos a presentar teoría. Surgirá de la prueba.
"Lic. Nieves López: Y de los informes."

Por tanto, se desprende claramente que la defensa se avino expresamente a que el fiscal no expusiera su teoría a la corte. "La exposición de sus respectivas teorías por el fiscal y por la defensa, se hace con el fin de preparar al jurado para que pueda entender e interpretar debidamente la evidencia que le ha de ser sometida en apoyo de una y otra teoría." *Pueblo* v. *Pierantoni*, 60 D.P.R. 13, 16. Si el acusado interesaba que se diera cumplimiento a este requisito estatutario, en vez de allanarse a que el fiscal no expusiera su teoría del caso, debió insistir en que se cumpliera con esa disposición de ley. Bajo las circunstancias, aun aceptando a los fines de la discusión, pero sin resolverlo, que en esta jurisdicción el precepto del estatuto es obligatorio, el acusado renunció al mismo. Además, la cuestión no puede ser suscitada por primera vez en apelación.

█ El último error señalado por el apelante es al efecto de que "cometió error el tribunal apelado al apreciar la prueba, por cuanto la evidencia admitida no es suficiente para justificar una convicción." Conforme acertadamente la sin-

---

Interpretando ese precepto legal se ha resuelto allí que "en una causa criminal la ley no exige que el fiscal haga un informe preliminar del caso." Véanse *People* v. *López*, 209 P.2d 439, 441 (Cal. 1949); *Peop'e* v. *Arnold*, 250 Pac. 168 (1926), 199 Cal. 471, 486. *Cf. State* v. *Barton*, 22 So.2d 183; *State* v. *Shuff*, 3 So.2d 278; *State* v. *Brown*, 156 So. 359; *People* v. *Levine*, 77 N.E.2d 129; *People* v. *McLaughlin*, 53 N.E.2d 356.

tetiza en su informe el fiscal de este Tribunal: "La prueba de El Pueblo revela que la perjudicada, Leida Morales Rodríguez, se encontraba para el día 8 de mayo de 1954 bailando en una terraza acompañada de un compadre. Un muchacho con quien ella bailaba trató de tomarse ciertas libertades a lo cual ella protestó y se quejó a su acompañante. Este último fué agredido con una botella y la perjudicada al verlo herido salió del local corriendo. Al salir tropezó con el acusado y aquí apelante quien la agarró por una mano y trató de llevarla hacia un carro que estaba detenido allí cerca. Ella se resistió y entonces llegó otro individuo de nombre Johnny González, (quien) requirió de Elvin Santiago para que soltara a la muchacha. Al soltarla, éste retuvo el reloj pulsera que ella llevaba en su mano izquierda. La perjudicada fué el domingo a darle parte a la policía (el hecho delictivo ocurrió el sábado por la noche) pero allí fué requerida para que se presentara el lunes. El reloj no había llegado a poder de ésta para la fecha de la celebración del juicio aunque había sido recuperado por la policía."

La prueba de la defensa, según también la sintetiza el fiscal, tendió a "probar que durante el baile se formó una discusión y que Elvin Santiago Ramírez sacó a la muchacha del sitio donde se encontraba y al llegar a la puerta Johnny González también le dió un halón por la mano y la sacó de allí. Después del forcejeo el acusado . . . se encontró en el piso un reloj, pero había varias personas que lo reclamaban como suyo. También Leida Morales Rodríguez alegaba que el acusado le había quitado un reloj de su mano. El acusado . . . llevó el reloj que . . . se había encontrado y se lo dió a su mamá para que se lo entregara a su dueño si aparecía, o de lo contrario se lo entregara a la policía. Cuando la policía, durante el transcurso de la investigación, fué a la casa del acusado la mamá de éste le entregó el reloj."

Se verá desde luego que hubo conflicto en la prueba, pero el juez que conoció del caso dirimió el conflicto y concluyó que el acusado había sustraído el reloj de manos de Leida con

ánimo de apropiárselo para sí. Tal conclusión está plenamente sostenida por la evidencia que el tribunal tuvo ante sí. *Pueblo* v. *Bastián*, 71 D.P.R. 843.

 Al discutir su tercer error el acusado también sostiene que los elementos del delito de hurto son esencialmente distintos a los que integran el delito de robo, y que de ser creída la evidencia ofrecida por el ministerio público, "el pueblo probó un delito de robo y no de hurto."

Según el art. 238 del Código Penal:

"Entiéndese por robo el acto de apoderarse criminalmente de bienes muebles pertenecientes a otro, ya sustrayéndolos de su persona, ya en su inmediata presencia y contra su voluntad, *por medio de la violencia o de la intimidación.*" (Bastardillas nuestras.)

Y según el art. 426 del mismo cuerpo legal:

"Hurto (*larceny*) es el acto de sustraer, con intención criminal, bienes muebles o semovientes, pertenecientes a otra persona,"

siendo hurto de mayor cuantía (art. 428) aquél que se comete (2) "cuando la propiedad es sustraída de la persona." El delito de robo y el de hurto mayor se asemejan en que en ambos hay una sustracción de propiedad mueble, perteneciente a una tercera persona, con ánimo de apropiársela para sí la persona que la sustrae. También, en que tanto en el delito de robo como en el de hurto mayor la propiedad sustraída puede serlo de la propia persona del perjudicado. Empero, para que exista el delito de robo la propiedad tiene que haber sido sustraída "por medio de la violencia o de la intimidación," mientras que bajo la modalidad del delito de hurto mayor a que aludimos basta que la propiedad sea sustraída pacíficamente de la persona del perjudicado. *Cannon* v. *State*, 107 P.2d 809. Ambos delitos son graves (*felonies*) y el de hurto mayor está claramente comprendido dentro del delito de robo. *People* v. *Church*, 116 Cal. 300. Con la prueba que el tribunal tuvo ante sí muy bien pudo declarar al acusado culpable del delito de hurto mayor imputádole.

*No habiéndose cometido ninguno de los errores señalados, la sentencia apelada será confirmada.*

---

Opinión concurrente del Juez Asociado Sr. Negrón Fernández.

Estoy conforme con el resultado. En este caso, el día de la lectura de la acusación, se solicitó por el acusado y se ordenó por el tribunal, que el juicio se celebrara por jurado. El día del juicio, comenzó el procedimiento para su constitución. Entonces fué que el acusado renunció a él, a través de su abogado y por sí, personalmente. Estas circunstancias demuestran que el acusado conocía su derecho a ser así juzgado; que reclamó ese derecho, el cual le fué en todo momento reconocido, y que, al renunciarlo, hizo uso de una prerrogativa exclusivamente suya. En este último acto no aparece vicio alguno que invalide el procedimiento que culminó en su convicción.