EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* LUIS MANUEL DEL VALLE, acusado y apelante.

*Número:* CR-64-245      *Resuelto:* 5 de noviembre de 1964

176

*Eugenio Ramos Ortiz,* abogado designado por el Tribunal Supremo para ofrecer asistencia legal al acusado en apelación; *J. B. Fernández Badillo, Procurador General, y J. F. Rodrí-*

*guez Rivera, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El Fiscal acusó al apelante de un delito de robo consistente en que en la madrugada del 29 de mayo de 1963, en Yauco, Puerto Rico, se apoderó de la suma de $90.00 perteneciente a Francisco Cruz Bracero, sustrayéndolo de su persona contra su voluntad y por medio de la fuerza, violencia e intimidación. Un jurado le declaró convicto de dicho delito y fue sentenciado a cumplir de 3 a 6 años de presidio.

La prueba de cargo consistió en el testimonio del perjudicado y en el de un policía que practicó el arresto del acusado. Declaró el perjudicado Francisco Cruz Bracero que en la noche del 28 de mayo de 1963 vio al acusado en un cafetín de la calle Buena Vista, esquina Pasarell de Yauco, donde el testigo llegó como a las nueve de la noche; que el testigo estuvo allí hablando como hasta las once de la noche y se dio "dos palitos"; que cuando cerraron el cafetín, las ocho o diez personas que allí habían se fueron a sentarse en la escalera de un establecimiento que había al frente donde permanecieron todos hasta las once y media de la noche, hora en que se retiraron todos menos el testigo y el acusado; que estuvieron allí hasta las dos de la mañana cogiendo fresco pero sin hablarse. El Fiscal le preguntó si sucedió algo y contestó:

> "Sí, cuando me disponía a irme para casa, que me paré, el joven [refiriéndose al acusado] me dio un fuerte empujón que caí al pavimento achocao; entonces me metió la mano al bolsillo y me levantó una cartera negra que tenía que contenía noventa dólares; un billete de cinco y el resto de a peso.
> "¿Esos chavos de qué eran?
> Del negocio.

¿De quincalla suya?

Sí, señor.

¿Si él le dió un empujón cómo sabe que le metió la mano?

Porque eso pasó rápido; quedé atontado.

¿Entonces no perdió totalmente el conocimiento?

No, atontado.

¿No pudo haber sido otra persona la que le metió la mano?

No, el mismo porque yo lo ví cuando iba a distancia.

¿Ud. lo vió cuando iba a distancia?

Sí, señor, cuando iba como de aquí a aquella columna.

¿Cuándo le metió la mano al bolsillo lo vió usted?

Sentí cuando levantó la cartera.

La Corte:

¿Quién la levantó?

Él se la llevó una cartera negra."

Siguió declarando el testigo que después que se recobró siguió para su casa en el mismo pueblo de Yauco y que porque le dolía la cabeza no fue donde la policía hasta el día siguiente; que a pesar de estar "achocao" vió al acusado cuando le sustrajo la cartera, y que siguió viéndolo mientras se alejaba del sitio; que no persiguió al acusado aunque se repuso enseguida del golpe que había recibido. Negó que tanto él como el acusado estuvieran en estado de embriaguez y asimismo que cuando estaban en la escalera tomaran licor.

El policía Rómulo Alvarado arrestó al acusado como a los diez o doce días de haber ocurrido los hechos. No los presenció.

La prueba de defensa consistió en el testimonio del propio acusado. Declaró que la noche de los hechos regresaba del cine, vio al señor Cruz Bracero junto a otras personas con una botella; que le convidó a una copa y siguieron dándose tragos allí; que Cruz Bracero estaba hablando escandalosamente, él lo reprendió y Cruz Bracero se levantó y le dio un golpe; que trató de defenderse. Sigue declarando: "Cuando él se cayó, como él es más fuerte que yo, corrí, pero en ningún momento yo le cogí ningún dinero a él." Declaró además que conocía a Cruz Bracero y se saludaban; que ese

señor conocía a los hermanos y a los padres del testigo; que siempre había estado en términos cordiales con Cruz Bracero.

En este recurso el apelante señala la comisión de varios errores refiriéndose el primero de ellos a la omisión del tribunal sentenciador de trasmitir instrucciones al jurado sobre los delitos menores incluidos en el de robo.

█ Es cierto que el acusado no solicitó tales instrucciones y que en repetidas ocasiones hemos resuelto que un acusado que deje de solicitar de la corte una instrucción sobre determinado extremo no puede alegar como error la omisión de tal instrucción. *Pueblo* v. *García,* 78 D.P.R. 396 (1955); *Pueblo* v. *Cirino,* 69 D.P.R. 525 (1949); *Pueblo* v. *Díaz,* 63 D.P.R. 987 (1944). También hemos resuelto que cuando al terminar sus instrucciones al jurado, la corte pregunta al abogado defensor (como ocurrió en este caso), si desea alguna instrucción especial, él contesta que no y no hace objeción, ni aun de carácter general, a ninguna de las trasmitidas, con ello renuncia a cualesquiera errores en ellas que no lesionen sus derechos fundamentales. *Pueblo* v. *Negrón,* 79 D.P.R. 296 (1956). Instrucciones deficientes que no perjudican derechos sustanciales del acusado no dan lugar a la revocación. *Pueblo* v. *Lampón,* 78 D.P.R. 109 (1955). Hemos establecido la regla general de que de ordinario el acusado debe solicitar las instrucciones especiales o excepcionar las trasmitidas para que pueda levantar con éxito en apelación el error en la omisión de las instrucciones especiales o que las trasmitidas fueron erróneas. A esta regla general hemos hecho una excepción cuando el error lesiona derechos sustanciales del acusado. *Pueblo* v. *Rodríguez,* 70 D.P.R. 23 (1949); *Pueblo* v. *Baerga,* 70 D.P.R. 90 (1949); *Pueblo* v. *Lampón,* supra; *Pueblo* v. *Rosado,* 78 D.P.R. 436 (1955); *Pueblo* v. *Alsina,* 79 D.P.R. 46 (1956).

En este caso el juez instruyó al jurado que solamente podían rendir dos posibles veredictos, culpable o no culpable

del delito de robo. No le trasmitió instrucciones sobre ninguno de los delitos menores comprendido dentro del delito de robo.

En *Pueblo* v. *Gómez*, 71 D.P.R. 816 (1950), dijimos que bajo una acusación que alegue que la sustracción se realizó por medio de la violencia, el acusado puede ser convicto del delito de acometimiento y agresión, en uno de sus dos grados, por estar estos dos delitos menores incluidos en el imputado. Véase además, *Pueblo* v. *Rivera*, 89 D.P.R. 454 (1963), donde dijimos que el delito de hurto está incluido en el de robo. Si bien la prueba de cargo tendió a demostrar que el apelante dio un empellón al perjudicado lanzándole sobre el pavimento y sustrayéndole entonces una cartera de su bolsillo, lo que establecería una sustracción por medio de la violencia, la teoría de defensa y su prueba fue al efecto de que entre el acusado y el perjudicado surgió una riña y que cuando este último cayó al suelo, el primero hechó a huir por temor a recibir una agresión mayor de su adversario sin que en momento alguno sustrajera a éste su cartera. Bajo la teoría de defensa no procedía un veredicto inculpatorio de acometimiento y agresión contra el acusado pues éste negó ser el agresor, Tampoco procedía uno inculpatorio de hurto porque negó la sustracción de la cartera, y por la misma razón tampoco procedía uno de culpabilidad de ataque para cometer robo. Bajo la teoría de defensa, procedía, de ser creída, un veredicto de absolución y ningún otro.

En sus instrucciones al jurado el juez debe incluir todos los puntos de derecho que bajo cualquier teoría razonable puedan estar envueltos en las deliberaciones, siempre, desde luego, que la prueba lo justifique. *Pueblo* v. *Burgos*, 76 D.P.R. 199 (1954); *Pueblo* v. *Jiménez*, 78 D.P.R. 7 (1955); pero en este caso la prueba de ambas partes sólo justificaban un veredicto absolutorio o condenatorio del delito de robo. No encontramos que las instrucciones trasmitidas al jurado

hayan lesionado derechos sustanciales del acusado, por lo que debe desestimarse el primer señalamiento de error.

■ El segundo error carece de mérito. Descansa en la premisa falsa de que en el récord no hay prueba directa de la sustracción de la cartera por el acusado, y de que por tanto, debió instruirse al jurado sobre prueba circunstancial. Lo que resolvimos en los casos de *Pueblo* v. *Saavedra*, 42 D.P.R. 365 (1931) y *Pueblo* v. *Crespo*, 21 D.P.R. 300 (1914, fue que es la mejor práctica instruir al jurado sobre prueba circunstancial en todos los casos en que la prueba en conjunto, o aun en parte, es de ese carácter, y ya hemos visto que la presentada en este caso sobre la sustracción de la cartera es prueba directa.

■ El tercer señalamiento queda resuelto con lo que dijimos al considerar el primer error. No se violó en este caso la Regla 147 de Procedimiento Criminal invocada por el apelante porque eran improcedentes, según hemos resuelto, instrucciones sobre otros delitos menores incluidos en el de robo.

■ Los errores cuarto y quinto los discute el apelante conjuntamente. Las instrucciones generales fueron sometidas por escrito al jurado a solicitud del fiscal y de la defensa. Se queja el apelante de que el juez no se cercioró de si los señores del jurado leyeron dichas instrucciones. En ausencia de demostración de que ocurriera alguna anormalidad, o de que las instrucciones escritas eran erróneas, no daremos ulterior consideración a dichos errores.

■ El sexto error tampoco fue cometido. El fiscal anunció que su teoría surgiría de la prueba. El acusado no objetó. Suponiendo que la Regla 128 de Procedimiento Criminal obligue al Fiscal a exponer la teoría del Pueblo, la cuestión no podría suscitarla el acusado por primera vez en apelación, excepto que pudiera demostrar, cosa que no ha hecho en este caso, que la omisión de la teoría del Pueblo, perjudicó

182

sus derechos sustanciales. *Pueblo* v. *Santiago*, 78 D.P.R. 69, 73 (1955).

Por el séptimo señalamiento se ataca la suficiencia de la prueba. La que obra en autos es suficiente para sostener el veredicto del jurado.

Por el octavo y último error el apelante sostiene que la sentencia es nula porque no tuvo la debida asistencia legal.

No podemos tachar de inadecuada la defensa legal del acusado. El hecho de que la defensa renunciara a que se dieran instrucciones orales, sin demostrarse que ello perjudicara al acusado, ni el hecho de que no se solicitaron instrucciones especiales sobre los delitos menores incluidos en el de robo, las cuales hemos resuelto no procedían, y que son los únicos apuntamientos que hace el apelante, no justifican el planteamiento de falta de asistencia de abogado. Por otro lado, las equivocaciones o errores del abogado de la defensa no pueden invocarse en apelación como fundamento para revocar, en ausencia de mala fe, fraude, incapacidad física y mental, o de clara, indisculpable y grave incompetencia profesional de dicho abogado en el juicio. *Marrero Laffosse* v. *Márshal, Tribl. Superior*, 89 D.P.R. 564 (1963); *Pueblo* v. *Díaz Martínez*, 87 D.P.R. 691 (1963) y *Pueblo* v. *Torres*, 81 D.P.R. 678 (1960).

El récord no indica que éste sea un caso en que puedan invocarse las equivocaciones o errores del abogado defensor en el juicio como fundamento para revocar la sentencia.

*Se confirmará la sentencia apelada.*